

CORPORATION SERVICE COMPANY®

# Notice of Service of Process

NJP / ALL
Transmittal Number: 6523325
Date Processed: 04/02/2009

**Primary Contact:** Mr. Andrew Holland- 18th Floor
American International Group, Inc.
175 Water Street
New York, NY 10038

| | |
|---|---|
| **Entity:** | Lexington Insurance Company<br>Entity ID Number 1903911 |
| **Entity Served:** | Lexington Insurance Company |
| **Title of Action:** | Xavier Dawson, a minor by and through his Mother and Next Friend Lashanda Haddix vs. William C. Allen, M.D. |
| **Document(s) Type:** | Third Party Complaint |
| **Nature of Action:** | Contract |
| **Court:** | Fayette Circuit Court, Kentucky |
| **Case Number:** | 06-CI-04441 |
| **Jurisdiction Served:** | Kentucky |
| **Date Served on CSC:** | 04/02/2009 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| **Plaintiff's Attorney:** | Steven G. Kinkel<br>859-253-0523 |



RECEIVED

APR 03 2009

AIG Commercial Insurance
Law Department

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System*

2711 Centerville Road Wilmington, DE 19808 (888) 690-2882 | sop@cscinfo.com

| AOC-120 | Doc. Code: TP | | Case No. | 06-CI-04441 |
| Rev. 4-01 | 03/31/2009 03:29 pm | | Court | Circuit |
| Page 1 of 1 | Ver. 1.01 | | | |
| Commonwealth of Kentucky | | | County | Fayette |
| Court of Justice | | **THIRD-PARTY** | | |
| CR 14 | | **SUMMONS** | | |

PLAINTIFF

XAVIER DAWSON, A MINOR, BY AND THROUGH

HIS MOTHER AND NEXT FRIEND,

LASHANDA HADDIX

VS.

DEFENDANT and
THIRD-PARTY PLAINTIFF

WILLIAM C. ALLEN, M.D.; DANIEL BEALS, M.D.

STEVEN LASHERM. M.D.; AND

LORI ANDERSON, C.R.N.A.

VS.

THIRD-PARTY DEFENDANT

LEXINGTON INSURANCE COMPANY

CSC-Lawyers Incorporating Service Co.

421 West Main Street

Frankfort                    Kentucky                    40601

THE COMMONWEALTH OF KENTUCKY TO THE ABOVE-NAMED THIRD-PARTY DEFENDANT:

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the complaint(s) delivered to you with this Summons. **Unless written response is made** by you or by an attorney on your behalf **within twenty (20) days** following the day these papers are delivered to you, **judgment by default** may be taken against you for the relief demanded in the attached complaint. **You must respond to both of the parties** demanding relief in this action. The names and addresses of both parties or their attorneys are shown at the end of the complaint(s) delivered to you with this Summons.

Date: MAR 3 1 2009 , 2

FAYETTE COUNTY
120 N. LIMESTONE STREET C103
LEXINGTON, KENTUCKY 40507               Clerk
by: _____ D.C.

PROOF OF SERVICE

This summons was served by delivering a true copy and the complaint (or other initiating document) to

_____ this _____ day of

_____, 2____.

Served by: _____

Page 1 of 1

COMMONWEALTH OF KENTUCKY
22ND JUDICIAL DISTRICT
FAYETTE CIRCUIT COURT
THIRD DIVISION
CASE NO. 06-CI-04441

XAVIER DAWSON, A MINOR, BY AND
THROUGH HIS MOTHER AND NEXT FRIEND,
LASHANDA HADDIX

MAR 3 1 2009          PLAINTIFF

V.

WILLIAM C. ALLEN, M.D.;
DANIEL A. BEALS, M.D.;
STEVEN LASHER, M.D.;
LORI ANDERSON, C.R.N.A.;
TRACY LEAR, R.N.;
ELLEN GARNER, R.N.;
SARAH HAGGARD, R.N.;
MELISSA HAMILTON-LEWIS, R.N.;
SHERRY REDDINGTON, R.N.; AND
HEALTH INVENTURES, LLC                    DEFENDANTS

AND

TRACY LEAR, R.N.;
ELLEN GARNER, R.N.;
SARAH HAGGARD, R.N.;
MELISSA HAMILTON-LEWIS, R.N.;
SHERRY REDDINGTON, R.N.; AND
HEALTH INVENTURES, LLC              CROSS-CLAIMANTS

V.

UNIVERSITY OF KENTUCKY MEDICAL
CENTER AND UNIVERSITY HOSPITAL OF
THE ALBERT B. CHANDLER MEDICAL
CENTER, INC.                        CROSS-CLAIM
                                    DEFENDANTS

AND

TRACY LEAR, R.N.;
ELLEN GARNER, R.N.;
SARAH HAGGARD, R.N.;
MELISSA HAMILTON-LEWIS, R.N.;
SHERRY REDDINGTON, R.N.; AND
HEALTH INVENTURES, LLC                THIRD PARTY PLAINTIFFS

V.

BOARD OF TRUSTEES OF THE
UNIVERSITY OF KENTUCKY                THIRD PARTY DEFENDANT

AND

WILLIAM C. ALLEN, M.D.;
DANIEL A. BEALS, M.D.;
STEVEN LASHER, M.D.;
LORI ANDERSON, C.R.N.A.;              THIRD PARTY PLAINTIFFS

**THIRD PARTY COMPLAINT FOR**
**PURPOSE OF DECLARATORY JUDGMENT**

V.

LEXINGTON INSURANCE
COMPANY
Agent for service or process:
CSC – Lawyers Incorporating Service Co.
421 West Main Street
Frankfort, KY 40601

FEDERAL INSURANCE
COMPANY
Agent for service of process:
CT Corporation Systems               THIRD PARTY DEFENDANTS
4169 Westport Road
Louisville, KY 40207

* * * * * *

2

Come the Defendants/Third Party Plaintiffs, William C. Allen, M.D., Daniel A. Beals, M.D., Steven Lasher, M.D., and Lori Anderson, C.R.N.A., and for their Third Party Complaints for Declaratory Judgment against Lexington Insurance Company, a wholly owned subsidiary of American International Group, Inc., and Federal Insurance Company, a member of the Chubb Group of Insurance Companies, state as follows:

1. The Defendant, Health Inventures, LLC, is a limited liability company registered with the Secretary of State and authorized to do business in Kentucky.

2. The Defendants, Tracy Lear, R.N., Ellen Garner, R.N., Sarah Haggard, R.N., Melissa Hamilton-Lewis, R.N. and Sherry Reddington, R.N., were at all times referred to herein registered nurses and employees of Health Inventures.

3. Lexington Insurance Company, a wholly owned subsidiary of American International Group, Inc., is a Delaware corporation with administrative offices at 100 Summer Street, Boston, MA 02110-2103.

4. Federal Insurance Company, a member of the Chubb Group of Insurance Companies, is a registered foreign corporation with administrative offices at 15 Mountain View Road, P.O. Box 1615, Warren, NJ, 07059.

5. On or about January 8, 2003, Johnson & Johnson Healthcare Systems, Inc., through its Ambulatory Surgery Group, entered into a contract (the "Contract") to manage and operate a surgery center at the University of Kentucky Medical Center under the name University of Kentucky Center for Advanced Surgery (CAS).

6. The Ambulatory Surgery Group of Johnson & Johnson Health Care Systems, Inc., was purchased by an entity initially known as Ascent Health Ventures, LLC, the name of which was later changed to Health Inventures, LLC.

3

7. The Contract was assigned by Johnson & Johnson Healthcare Systems, Inc. to Health Inventures, LLC, however, Johnson & Johnson Healthcare Systems, Inc. remained fully responsible for its obligations under the Contract.

8. At the time of the events in the present case Health Inventures, through its employees and agents, was managing and operating the CAS, including, but not limited to, hiring, selection, credentialing, supervision, training and monitoring of quality of care of the nursing staff.

9. The Plaintiff filed the present Complaint alleging negligence on the part of all of the named Defendants herein, including Health Inventures and its employees, Tracy Lear, R.N., Ellen Garner, R.N., Sarah Haggard, R.N., Melissa Hamilton-Lewis, R.N. and Sherry Reddington, R.N., seeking compensatory damages for alleged injuries.

10.    The Plaintiffs' Complaint alleged that Health Inventures' employees Tracy Lear, R.N., Ellen Garner, R.N., Sarah Haggard, R.N., Melissa Hamilton-Lewis, R.N. and Sherry Reddington, R.N., were agents, servants and employees of University of Kentucky Medical Center and University Hospital of the Albert B. Chandler Medical Center, Inc.

11.    Health Inventures has stated through pleadings and discovery answers that the liability insurance available to itself and its employees is limited to $1,000,000, from its Healthcare Professional Liability (Nurse Professional Liability) policy provided by the Lexington Insurance Company with stated liability coverage limits of "$1,000,000 per medical incident, $3,000,000 aggregate". (See Exhibit "A" attached, Lexington Insurance Company Healthcare Professional Liability - Claims Made Coverage Part, page HPLC0018.)

12. Health Inventures has asserted its employees and managers at CAS were at the time of the events herein agents of the University of Kentucky and that as a result any liability imposed on Health Inventures or its employees in excess of the $1,000,000 Nurse Professional

4

Liability limits should be provided by the Basic Coverage Compensation Fund, KRS 164.939 et sec.

13.   Health Inventures has asserted that there is no other entity besides the Basic Coverage Compensation Fund that would be "obligated by law or contract to pay and discharge any liability or judgment" against Health Inventures and its employees, in excess of the $1,000,000, coverage from its Nurse Professional Liability policy.  (Health Inventures Cross Claim, Paragraph 26).

14. The compensatory damages alleged by the Plaintiffs in this matter are in excess of the $1,000,000, Nurse Professional Liability policy limits claimed by Health Inventures .

15. The Lexington Insurance Company policy for Healthcare Professional Liability and Healthcare General Liability provides coverage for liability resulting from acts or omissions of Health Inventures, LLC, its employees and agents through a Healthcare Professional Liability (Management and E&O) endorsement with limits of "$2 million per medical incident, $2 million aggregate". (See Exhibit "A" attached, Lexington Insurance Company Healthcare Professional Liability - Claims Made Coverage Part, page HPLC0018 and HPLC0015.)

16.   Health Inventures is covered through The Federal Insurance Company, A member of the Chubb Group of Companies, by a Commercial Excess and Umbrella policy for losses in excess of the limits of the underlying insurance policies, including among others the Lexington Insurance Company Healthcare Professional Liability and Healthcare General Liability policy. That policy states limits of $5,000,000. (See Exhibit "B" attached, "Chubb Commercial Excess and Umbrella Insurance Policy, UMBREL005-0071.)

## COUNT I

**REQUEST FOR DECLARATION OF
RIGHTS AND RESPONSIBILITIES OF
LEXINGTON INSURANCE COMPANY FOR
LIMITS OF NURSING LIABILITY COVERAGE**

17. These Defendants/Third Party Plaintiffs adopt and incorporate all of the statements and allegations contained in the Paragraphs above as if set forth in fully herein.

18. An actual controversy exists as to the question of whether the Lexington Insurance Company policy for Nurse Professional Liability coverage for Health Inventures, LLC, should apply the limit of $1,000,000 per occurrence or the limit of $3,000,000 in the aggregate.

19. The above named Third Party Defendants/Third Party Plaintiffs are therefore entitled to a declaration of the rights and responsibilities of the Lexington Insurance Company under its policy of insurance for Health Inventures relevant to the claims and damages alleged in this case.

## COUNT II

**REQUEST FOR DECLARATION OF
RIGHTS AND RESPONSIBILITIES OF
LEXINGTON INSURANCE COMPANY FOR
MANAGEMENT E&O LIABILITY COVERAGE**

20. These Defendants/Third Party Plaintiffs adopt and incorporate all of the statements and allegations contained in the Paragraphs above as if set forth in fully herein.

21. An actual controversy exists as to the question of whether the Lexington Insurance Company policy for Management E&O coverage for Health Inventures, LLC, with limits of $2,000,000 per occurrence and $2,000,000 in the aggregate, may provide liability insurance applicable to the claims in this case.

6

22. The above named Defendants/Third Party Plaintiffs are therefore entitled to a declaration of the rights and responsibilities of the Lexington Insurance Company under its policy of insurance for Health Inventures relevant to the claims and damages alleged in this case.

## COUNT III

### REQUEST FOR DECLARATION OF
### RIGHTS AND RESPONSIBILITIES OF
### FEDERAL INSURANCE COMPANY FOR
### EXCESS COMMERCIAL AND UMBRELLA COVERAGE

23. These Defendants/Third Party Plaintiffs adopt and incorporate all of the statements and allegations contained in the Paragraphs above as if set forth in fully herein.

24. An actual controversy exists as to the question of whether the Federal Insurance Company Commercial Excess and Umbrella policy for losses of Health Inventures in excess of the limits of underlying insurance policies, including among others Health Inventures' Lexington Insurance Company Healthcare Professional Liability and Healthcare General Liability policy, with limits of $5,000,000, is applicable to the claims in this case.

25. The above named Defendants/Third Party Plaintiffs are therefore entitled to a declaration of the rights and responsibilities of the Federal Insurance Company under its Commercial Excess and Umbrella policy of insurance for Health Inventures relevant to the claims and damages alleged in this case.

WHEREFORE, the Defendants/Third Party Plaintiffs, William C. Allen, M.D., Daniel A. Beals, M.D., Steven Lasher, M.D., and Lori Anderson, C.R.N.A., demand:

1.  A declaration of the rights and responsibilities of the Lexington Insurance Company to provide coverage to Health Inventures under the terms of the policy above relevant to the claims and damages alleged in this case.

2.  A declaration of the rights and responsibilities of the Federal Insurance Company to provide coverage to Health Inventures under the terms of the policy above relevant to the claims and damages alleged in this case.

Respectfully submitted,

FULKERSON & KINKEL, PLLC
239 N. Broadway
Lexington, KY 40507
(859) 253-0523

By _____
    STEVEN G. KINKEL
    MELANIE S. MARRS
    SHANNON M. NAISH
    ATTORNEYS FOR THE DEFENDANTS

UK012

8

Fax sent by  : 2016315057                    AIG DOMESTIC CLAIMS                    09-21-07 10:22    Pg:  1/22
02/25/2005 FRI 10:23  FAX



## LEXINGTON INSURANCE COMPANY
### WILMINGTON, DELAWARE
### ADMINISTRATIVE OFFICES: 100 SUMMER STREET, BOSTON, MA 02110-2103
#### (A Capital Stock Insurance Company)

### HEALTHCARE PROFESSIONAL LIABILITY
### CLAIMS MADE COVERAGE PART

THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE ONLY. COVERAGE IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD OR AN EXTENDED REPORTING PERIOD, IF APPLICABLE. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE POLICY WITH YOUR INSURANCE REPRESENTATIVE.

### I.   INSURING AGREEMENT

Healthcare Professional Liability

We will pay those sums that you become legally obligated to pay others as damages resulting from a medical incident arising out of professional services provided by any insured. The amount we will pay for damages is limited as described in Section IV., Limits of Insurance. The medical incident must take place on or after the retroactive date and before the end of the policy period. A claim for a medical incident must be first made against an insured during the policy period or the extended reporting period, if applicable. A claim for a medical incident must be made within the coverage territory.

No other obligation to pay sums or perform acts or services is covered unless explicitly provided for under Section II. DEFENSE AND OTHER PAYMENTS UNDER THIS POLICY - ALL COVERAGE PARTS of the GENERAL POLICY PROVISIONS AND CONDITIONS.

### II.   WHO IS AN INSURED

The following are insureds under this Coverage Part:

A.  You.

B.  An individual and the individual's spouse are insureds, but only with respect to the conduct of your business named in the Declarations of which such individual is the sole owner.

C.  A partnership or joint venture is an insured, but only if the partnership or joint venture is specifically listed as a Named Insured. The partnership's partners or joint venture's members and their spouses are also insureds, but only with respect to the conduct of your business.

D.  A limited liability company is an insured, but only if the limited liability company is specifically listed as a Named Insured. The limited liability company's members are also insureds, but only with respect to the conduct of your business. Your managers are insureds but only with respect to their duties as your managers.

E.  If you are designated in the Declarations as other than partnership, joint venture or limited liability company, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties for you.

EXHIBIT

_A_

tabbies®

Fax sent by  : 2816315857                    AIG DOMESTIC CLAIMS              09-21-07 10:23      Pg:  2/22
           02/25/2005 FRI 10:23  FAX                                                                    002/052



F.   Your employees, other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), are Insureds, but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

G.   Any student enrolled in a training program in connection with your professional services, but only when acting within the scope of his or her duties and at your direction.

H.   Any of your authorized volunteer workers, other than a healthcare provider, but only while acting within the scope of their duties as such and at your direction.

I.   Your legal representative if you die, but only with respect to his or her duties as a legal representative.

J.   Your superintendents, administrators, directors, department heads and heads of the medical staff, but only in their capacity as such.

K.   Members of your boards and committees, but only for conduct arising out of their duties as board or committee members and those who execute orders from your boards or committees, but only while in the course and scope of executing those orders.

L.   Your trustees and governors, but only for the conduct of your business within the course and scope of their employment or their duties as trustees or governors.

## III.  EXCLUSIONS

This insurance does not apply to any medical incident, claim or suit arising out of:

A.   Prior Acts

Acts, errors or omissions of which an Insured had knowledge prior to the inception date of the policy period, if, as of such date, an Insured could reasonably foresee a claim might result.

B.   Contractual Liability

Any liability you assume under any contract or agreement except an insured contract.

This exclusion does not apply to:

1.   Liability that you would have in the absence of a contract or agreement

2.   Liability you assume in a written contract with:

a.   A Health Maintenance Organization;

b.   A Preferred Provider Organization;

c.   An Independent Practice Association; or

d.   Any other similar organization;

HPLC0002



but only for such liability as is attributable to an insured's alleged negligence arising out of professional services; or

3.  A warranty of fitness or quality of any therapeutic agents or supplies an insured has furnished or supplied in connection with treatment that has been performed.

C.  Unfair Trade Practices

Any allegations of price fixing, unfair competition or trade practices; a dispute over fees, income or revenue; the inducement to enter into, the interference with or the dissolution or termination of any business or economic relationship; or violations of any federal, state or local law (including but not limited to Title 15 of the United States Code or any similar state statute) that prohibits the unlawful restraint of trade, business or profession.

This exclusion shall not apply to allegations of restraint of trade, business or profession arising out of the activities of the insured's professional boards or committees as described in Section II, Who Is An Insured, K. provided that settlement thereof or final judgment rendered therein does not affirm a violation of law; regardless of such final settlement or adjudication, we will provide a defense as to such allegations.

D.  U.S. Department of Health & Human Services (HHS)

Any administrative or judicial hearings pertaining to Medicare/Medicaid fraud or any other hearing initiated against an insured by HHS or by any utilization or quality review organization under contract with HHS.

This exclusion does not apply to HHS proceedings that allege the violation of the Emergency Medical Treatment and Labor Act.

E.  Workers Compensation and Similar Laws

Any obligation an insured has under a workers compensation, disability benefits, or unemployment compensation law or any similar law.

F.  Employer's Liability

1.  Bodily injury to an employee of yours arising out of and in the course of:

a.  Employment by you; or

b.  While performing duties related to the conduct of your business; or

2.  Claims or suits by a spouse, child, parent, grandparent, brother, or sister of that employee as a consequence of sub-paragraph a. above.

This exclusion applies:

1.  Whether you may be liable as an employer or in any other capacity; and

2.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

HPLC0003



G.  Employment Practices

Refusal to employ, termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or other practices or policies related to employment or professional privileges.

This exclusion does not apply to services by any person as a member of your formal accreditation, standards review or similar professional board or committee otherwise covered by this Policy.

H.  ERISA

Employee Retirement Income Security Act (ERISA) of 1974 or amendments thereto, or any similar state law.

I.  Damage to Property

Any damage to real or personal property and consequential loss resulting therefrom.

J.  War

War, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

K.  Dishonest Practices

Dishonest, fraudulent, criminal or malicious acts, errors, or omissions; however, we will defend civil claims alleging such acts, errors or omissions until final adjudication.

L.  Pollution

1.  The actual, alleged, or threatened, discharge, dispersal, seepage, migration, release, or escape of pollutants;

2.  Any direction, request, demand, order or statutory or regulatory requirement to test for, monitor, investigate, cleanup, remove, contain, treat, detoxify, or neutralize pollutants or in any way respond to or assess the effects of pollutants; or

3.  Any cost, charge, expense or request for reimbursement arising out of 1. or 2. above.

This exclusion shall not apply to damages arising out of heat, smoke or fumes from a hostile fire. As used in this exclusion, hostile fire means a fire which becomes uncontrollable or breaks out from where it was intended to be.

M.  Nuclear Hazards

Nuclear fission, nuclear fusion or radioactive contamination.

This exclusion does not apply to bodily injury to a patient arising out of the practice of Nuclear Medicine.



**N.** Asbestos

The manufacture, mining, use, sale, installation, removal, abatement, clean-up, distribution or exposure to asbestos, asbestos containing waste materials, asbestos waste, asbestos fibers, asbestos products and asbestos dust.

**O.** Sexual Misconduct

Any sexual act, including without limitation sexual intimacy (even if consensual), sexual contact, sexual advances, requests for sexual favors, sexual molestation, sexual assault, sexual abuse, sexual harassment, sexual exploitation or other verbal or physical conduct of a sexual nature. However, this exclusion does not apply to:

1. Any Specific Individual Insured who allegedly committed such sexual misconduct, unless it is judicially determined that the Specific Individual Insured committed the sexual misconduct. If it is judicially determined that the Specific Individual Insured committed the sexual misconduct we will not pay any damages.

2. Any other Insured, unless that Insured:

   a. knew or should have known about the sexual misconduct allegedly committed by the Specific Individual Insured, but failed to prevent or stop it; or

   b. knew or should have known that the Specific Individual Insured who allegedly committed the sexual misconduct had a prior history of such sexual misconduct.

We will defend claims alleging such acts until final adjudication.

As used in this exclusion, Specific Individual Insured includes employees and authorized volunteer workers while performing duties related to the conduct of your business.

**P.** Discrimination/Humiliation

Discrimination based on, but not limited to race, color, creed, sex, religion, age, national origin, physical impairment, sexual preference, nor any claims involving humiliation or mental anguish, arising out of such discrimination whether or not for alleged violation of any federal, state or local government law or regulation prohibiting such discrimination.

**Q.** Expected Or Intended Injury

Damages or harm expected or intended from an Insured's standpoint.

**R.** Other Coverage Parts

Any claims or suits brought under any Coverage Part of this Policy other than this Healthcare Professional Liability Claims Made Coverage Part.

**S.** Physicians

Any claim against any physician, including any resident, intern, extern, or fellow. This exclusion, however, shall not apply to any physician, including any resident, intern, extern, or fellow, employed by you with respect to the following:

HPLC0005

Fax sent by  : 2016315057          AIG DOMESTIC CLAIMS          09-21-07 10:24     Pg: 6/22
02/25/2005 FRI 16:24  FAX                                                          Ø006/052



1. Charitable activities approved by the Named Insured;

2. Participation in employer sponsored continuing medical education courses; or

3. While acting within the scope of their administrative duties for you.

T.   Insured vs. Insured

Any claims made by one Insured against another Insured.

This exclusion does not apply to services by any person as a member of your formal accreditation, standards review or similar professional board or committee otherwise covered by this Policy.

U.   Penalties

Any fines, penalties, punitive, exemplary, multiplied damages or the multiple portion of multiple damages.

## IV.   LIMITS OF INSURANCE

A.   The Limits of Insurance shown in Item 5(a) of the Declarations for Healthcare Professional Liability and the provisions below fix the most we will pay regardless of the number of:

1.   Insureds;
2.   Claims made or suits brought; or
3.   Persons or organizations making claims or bringing suits.

B.   The Aggregate Limit is the most we will pay for damages under Section I. INSURING AGREE-MENT - Healthcare Professional Liability

C.   Subject to paragraph A. above, the each medical incident limit stated in the Declarations, is the most we will pay under this Coverage Part for damages arising out of a single medical incident.

D.   All claims arising from one medical incident or a series of related medical incidents to any one patient shall be treated and shall be deemed to have occurred at the time of the first medical incident regardless of the number of claimants, or the number of Insureds against whom such claims are made.

E.   If the policy period is extended for an additional period of less than 12 months, the additional period will be deemed part of the policy period for purposes of determining the Limits of Insurance.

## V.   DEDUCTIBLE

A.   The First Named Insured shall be responsible for the deductible amount shown in the Declarations. Expenses we incur in investigating and defending claims and suits are included in the deductible. The deductible applies to each medical incident and the First Named Insured shall not insure against it without our written consent. All claims arising from a single medical incident or from continuous, related, or repeated medical incidents shall be subject to one deductible.

Fax sent by : 2816315857          AIG DOMESTIC CLAIMS          09-21-07 18:25   Pg: 7/22HPLC0007

02/25/2005 FRI 16:24  FAX



B.  The deductible aggregate show in Item 5(a) of the Declarations is the maximum amount of deducti-bles for which the Named Insured will be responsible for all medical incidents occuring during the policy period.

C.  We may pay all or part of the deductible to settle a claim or suit. The First Named Insured agrees to repay us promptly after we notify the First Named Insured of the settlement.

## VI.  ADDITIONAL CONDITIONS APPLICABLE TO THIS COVERAGE PART

In addition to the GENERAL POLICY PROVISIONS AND CONDITIONS - Section III. CONDITIONS APPLICABLE TO ALL COVERAGE PARTS, the following Conditions apply to this Coverage Part:

A.  Automatic Extended Reporting Period

1.  If this Coverage Part is canceled or not renewed for any reason other than non-payment of premium, and if the Optional Extended Reporting Period Endorsement is not purchased, then we will provide an automatic extended reporting period of sixty (60) days, starting with the end of the policy period, during which claims arising out of medical incidents which take place on or after the retroactive date stated on the Declarations Page but before the end of the policy period may be first made.

2.  The automatic extended reporting period does not extend the policy period or change the scope of coverage provided.  Any claim first made during the automatic extended reporting period shall be deemed to have been made on the last day of the policy period.

3.  The automatic extended reporting period, however, will not apply to claims if other insurance purchased by Insureds covers them or would have covered them had its limits of insurance of this policy not been exhausted.

4.  The Aggregate Limits of Insurance applicable to this Coverage Part shall not be increased or reinstated for the automatic extended reporting period.

B.  Optional Extended Reporting Period

1.  If the First Named Insured or we cancel or do not renew this insurance, the First Named Insured shall have the option to purchase an Optional Extended Reporting Period Endorse-ment, beginning with the end of the policy period. The additional premium for and the term of the Optional Extended Reporting Period Endorsement shall be as stated in Item 3c. of the Declarations.  The First Named Insured can not purchase this Endorsement if we cancel for non-payment of premium.

2.  The Optional Extended Reporting Period Endorsement applies only to claims first made against the Insured during the Optional Extended Reporting Period and arising from medical incidents which take place on or after the retroactive date stated in the Declarations Page and before the end of the policy period.  The Aggregate Limits of Insurance applicable to this Coverage Part shall not be increased or reinstated for claims under the Endorsement. Claims first made during the Optional Extended Reporting Period Endorsement shall be deemed to have been made on the last day of the policy period.

3.  To obtain an Optional Extended Reporting Period Endorsement the First Named Insured must request it in writing within sixty (60) days after the policy period ends and pay the premium due. If the First Named Insured does so, the premium shall be fully earned and the



Extended Reporting Period Endorsement cannot be canceled. If we do not receive the written request and payment within sixty (60) days after the policy period ends, the First Named Insured may not exercise this option at a later date.

4.  The insurance provided under the Extended Reporting Period Endorsement is excess over any other valid and collectible insurance that begins or continues in effect after the Extended Reporting Period Endorsement becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

5.  Our offer of terms, conditions or premium different from the expiring Policy or Coverage Part shall not be considered a refusal or failure to renew this insurance.

C.  Duties In the Event Of A Claim, Suit, or Medical Incident

1.  If during the policy period, the First Named Insured shall become aware of any medical incident which may reasonably be expected to give rise to a claim being made against any Insured, the First Named Insured must notify us in writing as soon as practicable. To the extent possible, notice should include:

a.  How, when, and where the medical incident took place;

b.  The names and addresses of any injured persons and witnesses; and

c.  The nature and location of any injury or damage arising out of the medical incident.

Any claim arising out of such medical incident which is subsequently made against any Insured and reported to us, shall be considered first made at the time such notice was given to us.

Receipt by us of an incident report, including but not limited to variance reports, will not be considered a claim to us.

Any observance or reporting to the First Named Insured by us of any physical condition or other circumstance as a result of inspections, audits, engineering, loss control or risk management services shall not be considered a claim to us.

2.  If a claim or suit is brought against an Insured arising out of a medical incident, the First Named Insured must:

a.  Immediately record the specifics of the claim or suit and the date received;

b.  Provide us with written notice of the claim or suit as soon as practicable; and

c.  Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or suit.

79225 (7/03)
HC0266

HPL - 8

HPLC0008

This endorsement, effective        January 17, 2005        forms a part of

Policy no.: 4768718(06)

Issued to:  Health Inventures, LLC; Mirage Endoscopy Center, LP; Sutter Roseville Endoscopy,
LLC; Sutter Solano Surgery Center, LLC dba Fairfield Surgery Center; Marshall Surgery Center;
Dubuque Regional Ambulatory Surgery Center dba Tri-State Surgery Center; North Platte
Surgery Center, LLC; Tucson Musculoskeletal, LLC dba Tucson Orthopedic Surgery Center, LLC
dba TOI Surgical Center; Algonquin Road Surgery Center, LLC

By: Lexington Insurance Company

## HEALTHCARE PROFESSIONAL LIABILITY
## HEALTHCARE GENERAL LIABILITY

### Schedule of Named Insureds

Item 1. of the Declarations is amended to include the following:

| Named Insured | Retroactive Date (if different than the Declarations) |
|---|---|
| Health Inventures, LLC (Management E & O) | 01/01/2003 |
| Health Inventures, LLC (Nurse Professional Liability) | 07/01/2003 |
| Mirage Endoscopy Center, LP | 02/10/2003 |
| Sutter Roseville Endoscopy, LLC | 08/27/2004 |
| Sutter Solano Surgery Center, LLC dba Fairfield Surgery Center | 05/03/2004 |
| Marshall Surgery Center | 09/17/2004 |
| Dubuque Regional Ambulatory Surgery Center dba Tri-State Surgery Center | 11/01/1998 |
| North Platte Surgery Center, LLC | 05/27/2003 |
| Tucson Musculoskeletal, LLC dba Tucson Orthopedic Surgery Center, LLC dba | |
| TOI Surgical Center | 08/01/2002 |
| Algonquin Road Surgery Center, LLC | 09/01/2002 |

All other terms, conditions and exclusions of the Policy remain unchanged.

_____
AUTHORIZED REPRESENTATIVE

80027(5/02)
HC0328

Fax sent by   : 2016315057        AIG DOMESTIC CLAIMS        09-21-07 10:26    Pg: 10/22HPLC0010
                                                                                010/052

02/25/2005 FRI 18:24 FAX



This endorsement, effective    January 17, 2005       forms a part of

policy no.:    4768718(06)

Issued to: Health Inventures, LLC; Mirage Endoscopy Center, LP; Sutter Roseville Endoscopy, LLC; Su
Solano Surgery Center, LLC dba Fairfield Surgery Center; Marshall Surgery Center; Dubuque Regional
Ambulatory Surgery Center dba Tri-State Surgery Center; North Platte Surgery Center, LLC; Tucson
Musculoskeletal, LLC dba Tucson Orthopedic Surgery Center, LLC dba TOI Surgical Center; Algonquin
Road Surgery Center, LLC

by: Lexington Insurance Company

## EMPLOYEE BENEFIT ADMINISTRATION LIABILITY ENDORSEMENT
## CLAIMS MADE

NOTICE: THE COVERAGE PROVIDED BY THIS ENDORSEMENT IS LIMITED TO THOSE CLA
FIRST MADE AGAINST THE INSURED DURING THIS ENDORSEMENT PERIOD.  VARI
OTHER PROVISIONS RESTRICT COVERAGE.  PLEASE READ THE ENTIRE ENDORSEME
CAREFULLY AND DISCUSS IT WITH YOUR INSURANCE AGENT OR BROKER.

The Healthcare General Liability Coverage Part is amended to include the following additional coverage:

### ADDITIONAL DECLARATIONS

Endorsement Period:   From:   January 17, 2005          To:   January 17, 2006

| Coverage | Limit of Insurance | Deductible |
|---|---|---|
| Per Claim | $ 1,000,000 | $ 1,000 |
| Aggregate | $ 1,000,000 | $ N/A |

Employment Benefit Administration Liability Retroactive Date:  See Form #80027 (5/02)

**I.    INSURING AGREEMENT**

**Administration Liability**

A.    We will pay all sums which you become legally obligated to pay others as damages resulting from
      wrongful act or that of any other person for whose acts you are legally liable, while acting solely w
      the administration of your employee benefit programs. The wrongful act must take place on or
      the retroactive date and before the end of the endorsement period. A claim for a wrongful act must
      be made during the endorsement period or during any applicable extended reporting period.

B.    In addition to our Limit of Insurance we will also pay defense costs. We have the right and duty to de
      any claim, and we will:

      1.    Do so even if any of the charges of the claim are groundless, false or fraudulent;
      2.    Investigate any claim as we feel appropriate.

74762 (12/99)                          Page 1 of 4
HC0085




## II.   EXCLUSIONS

In addition to Section III. Exclusions A. of the Healthcare General Liability Claims Made Coverage Part (except for Exclusion A.13.), the following exclusions shall also apply to the coverage provided in this Endorsement.

We will not defend or pay any claims against you:

A.   For any liability resulting from a wrongful act of which you had knowledge prior to the effective date of this endorsement, if you could reasonably foresee a claim might arise.

B.   For bodily injury to or sickness, disease or death of any person, or for injury to or destruction of any tangible property, including the loss of use thereof;

C.   For any claim based upon the failure or inability to fund any employee benefit programs, or any claim for failure of performance of contract by any insurer;

D.   For any class action lawsuit or purported class action lawsuit alleging any wrongful act in administration;

E.   For any claim for plan benefits, except for a claim solely alleging a wrongful act in administration; or

F.   For any claim based upon failure of any stock to perform as represented or advice given by you to an employee to participate or not to participate in any stock plan.

## III.   LIMITS OF INSURANCE

A.   The Limits of Insurance shown in the Additional Declarations and the rules below fix the most we will pay regardless of the number of:

1.   Insureds;
2.   Claims made or suits brought; or
3.   Persons or organizations bringing the actions or suits.

Only the endorsement in effect when the first claim is made will apply to all such claims.

B.   The Aggregate Limit stated in the Additional Declarations is the total limit of our liability for all claims made during the effective period of this endorsement.

C.   Subject to B. above, the Per Claim limit stated in the Additional Declarations is the most we shall pay for all damages arising out of any one wrongful act in the administration.

D.   The limit of insurance stated in the Additional Declarations is not reduced by the payment of defense costs.

E.   All claims arising from continuous, related, or repeated wrongful acts shall be treated as arising out of the first wrongful act.

## IV.   DEDUCTIBLE

A.   If a Deductible applies to this Endorsement, then you shall be responsible for the deductible amount stated in the Additional Declarations. The deductible applies to each wrongful act and

Fax sent by  : 2016315057        AIG DOMESTIC CLAIMS        09-21-07 10:27        Pg: 12/22 HPLC0012

02/25/2005 FRI 10:23 FAX                                                                     027062



may not insure against it. The deductible shall also apply to any amounts payable under the General Policy Provisions and Conditions, Section II. Other Payments.

B.  All claims arising from a single wrongful act or continuous, related, or repeated wrongful acts shall be subject to one deductible. The terms of this policy, including those with respect to notice of a claim or wrongful act and our rights to investigate and negotiate any such claim or suit, apply regardless of the deductible. Your bankruptcy, insolvency, or inability to pay the deductible shall not increase our obligations under this endorsement.

## V.   COVERAGE TERRITORY

This endorsement applies to damages which take place within the United States of America, its territories or possessions, or Canada, provided the claim or suit is brought against you during this endorsement period and provided that at the effective date of this endorsement you had no knowledge or could not have reasonably foreseen any circumstances which might result in a claim or suit.

## VI.   OPTIONAL EXTENDED REPORTING PERIOD

A.  If you cancel or do not renew this coverage, you shall have the right to purchase an Employee Benefit Administration Liability Optional Extended Reporting Period Endorsement for unlimited duration, beginning with the end of the endorsement period. Any extended reporting period that is purchased will start when the endorsement period set forth in the Additional Declarations ends.

B.  The additional premium for and the term of the Employee Benefit Administration Liability Optional Extended Reporting Period Endorsement shall be in accordance with the rates and rules in effect at the time of the purchase. You do not have the right to purchase an Employee Benefit Administration Liability Optional Extended Reporting Period Endorsement if we cancel for non-payment of premium.

C.  The Employee Benefit Administration Liability Optional Extended Reporting Period Endorsement applies only to claims first made against the Insured during the Optional Extended Reporting Period and arising from wrongful acts which take place on or after the retroactive date and before the end of the endorsement period. The Aggregate Limits of Insurance applicable to this Coverage Part shall be reinstated for claims under the Endorsement.

D.  To obtain an Employee Benefit Administration Liability Optional Extended Reporting Period Endorsement, you must request it in writing within sixty (60) days after the endorsement period ends and pay the premium due. If we do not receive the written request and payment within sixty (60) days after the endorsement period ends, you may not exercise this right at a later date. The Employee Benefit Administration Liability Optional Extended Reporting Period Endorsement cannot be canceled.

E.  The insurance provided under the Employee Benefit Administration Liability Optional Extended Reporting Period Endorsement is excess over any other valid and collectible insurance that begins or continues in effect after the Employee Benefit Administration Liability Optional Extended Reporting Period Endorsement is effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

## VII.   DEFINITIONS

A.  Administration means performing non-fiduciary administrative acts or tasks of:

74762 (12/99)                        Page 3 of 4
HC0085



1.    Counseling employees with respect to Employee Benefit Programs;

2.    Interpreting plan documents of Employee Benefit Programs;

3.    Filling out records in connection with Employee Benefit Programs; or

4.    Effecting enrollment, termination or cancellation of employees under Employee Bene
      Programs.

B.   Employee Benefit Programs means:

1.    Group life insurance, group accident or health insurance, profit sharing plans, pension pla
      employee stock subscription plans, workers compensation, unemployment insurance, so
      security benefits, disability benefits; and

2.    Any other employee benefit programs instituted after the effective date of this endorsem
      provided we are notified by you within thirty (30) days after the institution of such ben
      program(s).

C.   Wrongful Act means any breach of duty, neglect, error, misstatement, misleading statemen
     omission.

All other terms, conditions and exclusions of the Policy remain unchanged.


_____

AUTHORIZED REPRESENTATIVE



## ENDORSEMENT

This endorsement, effective, 12:01 AM,   January 17, 2005  forms a part of

Policy no.: 4768718(06)

Issued to:  Health Inventures, LLC; Mirage Endoscopy Center, LP; Sutter Roseville Endoscopy, LLC; Sutter Solano Surgery Center, LLC dba Fairfield Surgery Center; Marshall Surgery Center; Dubuque Regional Ambulatory Surgery Center dba Tri-State Surgery Center; North Platte Surgery Center, LLC; Tucson Musculoskeletal, LLC dba Tucson Orthopedic Surgery Center, LLC dba TOI Surgical Center; Algonquin Road Surgery Center, LLC

By:   Lexington Insurance Company

### TERRORISM EXCLUSION

This policy does not apply in any way to any occurrence, claim, injury or damage as applicable caused by, contributed to or in any way arising directly or indirectly as a result of or in connection with "Terrorism" including, but not limited to, any contemporaneous or ensuing injury or damage caused by fire, looting or theft.

"Terrorism" means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

"Terrorism" shall also include any act which is verified or recognized by the United States Government as an act of terrorism.

This endorsement is intended to supercede any other policy language inconsistent therewith.

All other terms and conditions of the policy remain the same.

AUTHORIZED REPRESENTATIVE OR COUNTERSIGNATURE
(IN STATES WHERE REQUIRED)

79110(12/01)
HC0265

## ENDORSEMENT #1

This endorsement, effective January 17, 2005   forms a part of

policy no.: 4768718(06)          issued to:  Health Inventures, LLC

by:  Lexington Insurance Company

## ENDORSEMENT

It is hereby understood and agreed that Health Inventures, L.L.C. is covered under this policy for E&O professional services as an ambulatory surgery center management company for others. The following exclusion shall apply solely to services performed by Health Inventures, L.L.C.

- based upon, arising out of, directly or indirectly, or in any way involving, the rendering, or failure to render, any **Medical Services.**

The term **Medical Services** shall mean medical, surgical, dental, nursing or other health care services including but not limited to the furnishing of food and beverages in connection with such services; the practice of nuclear medicine; the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or the handling of treatment of deceased human bodies, including, but not limited to, autopsies, organ donation or other procedures.

This exclusion shall not apply to Health Inventures, L.L.C. in its capacity as a provider of medical staffing to the ambulatory surgicenters under its management.

All other policy terms and conditions remain the same.

_____

AUTHORIZED REPRESENTATIVE

Manuscript (1/05)

ENDORSEMENT #2

This endorsement, effective January 17, 2005     forms a part of

policy no.:   4768718(06)

issued to: Health Inventures, LLC; Mirage Endoscopy Center, LP; Sutter Roseville Endoscopy, LLC; Sutter Solano Surgery Center, LLC dba Fairfield Surgery Center; Marshall Surgery Center; Dubuque Regional Ambulatory Surgery Center dba Tri-State Surgery Center; North Platte Surgery Center, LLC; Tucson Musculoskeletal, LLC dba Tucson Orthopedic Surgery Center, LLC dba TOI Surgical Center; Algonquin Road Surgery Center, LLC

by:  Lexington Insurance Company

## LIMIT OF LIABILITY ENDORSEMENT

We agree with you that, section, "Item 5 LIMIT OF INSURANCE" PART II" of the policy is subject to the following:

   You shall require medical staff members, defined as physicians, surgeons, dentists, podiatrists, nurse anesthetists, nurse midwives, optometrists, chiropractors, and acupuncturists, to maintain insurance equal to or greater than $1,000,000 each claim / $3,000,000 annual aggregate.

   The Company's liability on any one claim shall not exceed the lowest "each claim" amount maintained by medical staff member(s) who incurred the claim. If the medical staff member(s) that incurred the claim does not have professional liability insurance, then there are no limits of coverage provided under this policy.

All other terms and conditions of the policy remain unchanged.

AUTHORIZED REPRESENTATIVE OR COUNTERSIGNATURE
(IN STATES WHERE REQUIRED)

Fax sent by : 2016315057          AIG DOMESTIC CLAIMS          09-21-07 10:30     Pg: 17/22
02/25/2005 FRI 16:26  FAX                                                         7/052

## Endorsement #3

This endorsement, effective  January 17, 2005      forms a part of

Policy no.:   4768718(96)

Issued to:    Health Inventures, LLC; Mirage Endoscopy Center, LP; Sutter Roseville Endoscopy, LLC; Sutter Solano Surgery Center, LLC dba Fairfield Surgery Center; Marshall Surgery Center; Dubuque Regional Ambulatory Surgery Center dba Tri-State Surgery Center; North Platte Surgery Center, LLC; Tucson Musculoskeletal, LLC dba Tucson Orthopedic Surgery Center, LLC dba TOI Surgical Center; Algonquin Road Surgery Center, LLC

By: Lexington Insurance Company

In consideration of the premium charged, it is hereby understood and agreed that the deductible has been amended to show:

| Named Insured | Deductible(s) (if different than the Declarations) |
|---|---|
| Health Inventures, LLC (Management E & O) | $25,000 |
| Health Inventures, LLC (Nurse Professional Liability) | $25,000 |
| Mirage Endoscopy Center, LP | $5,000 |
| Sutter Roseville Endoscopy, LLC | $5,000 |
| Sutter Solano Surgery Center, LLC dba Fairfield Surgery Center | $5,000 |
| Marshall Surgery Center | $25,000 Elective Cosmetic Procedures $5,000 All Other Procedures |
| Dubuque Regional Ambulatory Surgery Center dba Tri-State Surgery Center | $5,000 |
| North Platte Surgery Center, LLC | $5,000 |
| Tucson Musculoskeletal, LLC dba Tucson Orthopedic Surgery Center, LLC dba TOI Surgical Center | $5,000 |
| Algonquin Road Surgery Center, LLC | $25,000 Elective Cosmetic Procedures $5,000 All Other Procedures |

All other terms, conditions and exclusions of the Policy remain unchanged.

AUTHORIZED REPRESENTATIVE

HPLC0017

Fax sent by : 2016315857          AIG DOMESTIC CLAIMS          09-21-07 18:38   Pg: 18/22
02/25/2005 FRI 16:28 FAX



## ENDORSEMENT #4

This endorsement, effective January 17, 2005      forms a part of

policy no.:   4768718(06)   issued to: Health Inventures, LLC; Mirage Endoscopy Center, LP; Sutter Roseville Endoscopy, LLC; Sutter Solano Surgery Center, LLC dba Fairfield Surgery Center; Marshall Surgery Center; Dubuque Regional Ambulatory Surgery Center dba Tri-State Surgery Center; North Platte Surgery Center, LLC; Tucson Musculoskeletal, LLC dba Tucson Orthopedic Surgery Center, LLC dba TOI Surgical Center; Algonquin Road Surgery Center, LLC

by:  Lexington Insurance Company

In consideration of the premium charged, it is hereby understood and agreed that the limits of liability for claims made for the following entities under policy #   4768718(06)   are as follows:

| Entity Name | Limits of Liability |
|---|---|
| Health Inventures, LLC (Management E&O) | $2,000,000 per Medical Incident, $2,000,000 Aggregate |
| Health Inventures, LLC (Nurse Prof. Liability) | $1,000,000 per Medical Incident, $3,000,000 Aggregate |
| Mirage Endoscopy Center, LP | $1,000,000 per Medical Incident, $3,000,000 Aggregate |
| Sutter Roseville Endoscopy, LLC | $1,000,000 per Medical Incident, $3,000,000 Aggregate |
| Sutter Solano Surgery Center, LLC dba Fairfield Surgery Center | $1,000,000 per Medical Incident, $3,000,000 Aggregate |
| Marshall Surgery Center | $1,000,000 per Medical Incident, $3,000,000 Aggregate |
| Dubuque Regional Ambulatory Surgery Center dba Tri-State Surgery Center | $1,000,000 per Medical Incident, $3,000,000 Aggregate |
| North Platte Surgery Center, LLC | $1,000,000 per Medical Incident, $3,000,000 Aggregate |
| Tucson Musculoskeletal, LLC dba Tucson Orthopedic Surgery Center dba TOI Surgical Center | $1,000,000 per Medical Incident, $3,000,000 Aggregate |
| Algonquin Road Surgery Center, LLC | $1,000,000 per Medical Incident, $3,000,000 Aggregate |

The limits of liability apply separately to each entity listed above.  Under no circumstances shall any entity listed above be entitled to coverage greater than the limits listed.

All other policy terms and conditions remain the same.

_____
AUTHORIZED REPRESENTATIVE

Manuscript 6/04

HPLC0018

Fax sent by : 2016315057          AIG DOMESTIC CLAIMS          09-21-07 10:31    Pg: 19/22

02/25/2005 FRI 10:20 FAX

## SCHEDULE OF EXCLUDED SERVICES/PROCEDURES

This endorsement, effective    January 17, 2005        forms a part of

policy no.:    4768718(06)

issued to: Health Inventures, LLC; Mirage Endoscopy Center, LP; Sutter Roseville Endoscopy, LLC; Sutter Solano Surgery Center, LLC dba Fairfield Surgery Center; Dubuque Regional Ambulatory Surgery Center dba Tri-State Surgery Center; North Platte Surgery Center, LLC; Tucson Musculoskeletal, LLC dba Tucson Orthopedic Surgery Center, LLC dba TOI Surgical Center

by: Lexington Insurance Company

The Policy is amended as follows:

The following services/procedures shall be excluded under this Policy:

-Elective cosmetic procedures, including, but not limited to, breast augmentation, liposuction, facelifts, etc.

-Labor/Delivery

-Abortions

-Radial Keratotomy

-Lens implantation for the correction of myopia

-Lasik Surgery

All other terms, conditions and exclusions of the Policy remain unchanged.

AUTHORIZED REPRESENTATIVE

Endorsement #5

HPLC0019

Fax sent by  : 2016315057          AIG DOMESTIC CLAIMS          09-21-07 18:31   Pg: 20/22
   02/25/2005 FRI 10:26 FAX

## SCHEDULE OF EXCLUDED SERVICES/PROCEDURES

This endorsement, effective, 12:01 AM, January 17, 2005        forms a part of

Policy no: 4768718(06)

Issued to:  Marshall Surgery Center, Algonquin Road Surgery Center, LLC

By: Lexington Insurance Company

The Policy is amended as follows:

The following services/procedures shall be excluded under this Policy:

-Labor/Delivery

-Abortions

-Radial Keratotomy

-Lens Implantation for the correction of myopia

-Lasik Surgery

All other terms, conditions and exclusions of the Policy remain unchanged.

<u>AUTHORIZED REPRESENTATIVE</u>

Endorsement #6

Fax sent by  : 2816315057                    AIG DOMESTIC CLAIMS              09-21-07 10:32        Pg: 21/22
02/25/2005 FRI 16:26  FAX                                                                         1/052

## ENDORSEMENT #7

This endorsement, effective   **January 17, 2005**        forms a part of

Policy no.: 4768718(06)

Issued to:  Health Inventures, LLC; Mirage Endoscopy Center, LP; Sutter Roseville Endoscopy, LLC; Sutter Solano Surgery Center, LLC dba Fairfield Surgery Center; Marshall Surgery Center; Dubuque Regional Ambulatory Surgery Center dba Tri-State Surgery Center; North Platte Surgery Center, LLC; Tucson Musculoskeletal, LLC dba Tucson Orthopedic Surgery Center, LLC dba TOI Surgical Center; Algonquin Road Surgery Center, LLC

By:  Lexington Insurance Company

## SCHEDULE OF LOCATIONS ENDORSEMENT

| NAMED INSURED | ADDRESS |
|---|---|
| Health Inventures, LLC | 1100 S, McCaslin Blvd., Ste. 200; Superior, CO 80027 |
| Mirage Endoscopy Center, LP | 39935 Vista Del Sol, #101; Rancho Mirage CA 92270 |
| Sutter Roseville Endoscopy, LLC | 4 Medical Plaza; Roseville, CA 95661 |
| Sutter Solano Surgery Center, LLC dba Fairfield Surgery Center | 2700 Low Court; Fairfield, CA 94553 |
| Marshall Surgery Center | 3501 Palmer Drive, Ste. 100; Cameron Park, CA 95682 |
| Dubuque Regional Ambulatory Surgery Center dba Tri-State Surgery Center | 1500 Associates Drive; Dubuque, IA 52002 |
| North Platte Surgery Center, LLC | 621 W. Francis; North Platte, NE 69101 |
| Tucson Musculoskeletal, LLC dba Tucson Orthopedic Surgery Center, LLC dba TOI Surgical Center | 2424 N. Wyatt Dr., Ste. 160; Tucson, AZ 85732 |
| Algonquin Road Surgery Center, LLC | 2550 W. Algonquin Rd., Lake in the Hills, IL 60156 |

All other terms, conditions, and exclusions of the Policy remain unchanged.

## AUTHORIZED REPRESENTATIVE

Fax sent by : 2016315857          AIG DOMESTIC CLAIMS          09-21-07 10:32      Pg: 22/22
02/25/2005 FRI 16:26  FAX

## ENDORSEMENT #8

This endorsement, effective January 17, 2005     forms a part of

policy no.:    4768718(06)

issued to: Health Inventures, LLC; Mirage Endoscopy Center, LP; Sutter Roseville Endoscopy,
LLC; Sutter Solano Surgery Center, LLC dba Fairfield Surgery Center; Marshall Surgery
Center; Dubuque Regional Ambulatory Surgery Center dba Tri-State Surgery Center;
North Platte Surgery Center, LLC; Tucson Musculoskeletal, LLC dba Tucson Orthopedic
Surgery Center, LLC dba TOI Surgical Center; Algonquin Road Surgery Center, LLC

by:  Lexington Insurance Company

## ENDORSEMENT

It is hereby understood and agreed that the Aggregate Limit for all loss incurred by the
Named Insureds listed on the Schedule of Named Insureds for this policy, will be no
greater than $15,000,000.

This endorsement does not change or diminish the Per Medical Incident or Per
Occurrence limit of any Named Insured listed on the Schedule of Named Insureds for this
policy.

All other policy terms and conditions remain the same.

AUTHORIZED REPRESENTATIVE

# *INSURED'S COPY*

HEALTH INVENTURES, LLC

10901 W 120TH AVE #400

BROOMFIELD, CO
80021

*PRODUCT:* UMB2001

*POLICY NO:* 000079821659

*TRANSACTION:* RENEWAL





UMBREL0005

HEALTH INVENTURES, LLC
10901 W 120TH AVE #400
BROOMFIELD, CO
80021

UMBREL0006



**CHUBB**

## Chubb Commercial Excess And Umbrella Insurance

*Policy Notice*

### Claims-Made Disclosure Notice

**THIS NOTICE IS NOT YOUR POLICY. IT MERELY DESCRIBES SOME OF THE MAJOR FEATURES OF CLAIM MADE COVERAGE. READ YOUR POLICY CAREFULLY TO DETERMINE WHAT IS AND IS NOT COVERED. ONLY THE PROVISIONS OF YOUR POLICY DETERMINE THE SCOPE OF YOUR INSURANCE PROTECTION.**

**Special "Claims-Made" Provisions**

Two concepts to continuity of coverage under the "claims-made" policy and the pertinent provisions are especially important to understand. These involve the Retroactive Date and the Extended Reporting Periods.

**Retroactive Date**

A Retroactive Date is shown on the Extended Reporting Period Endorsement. There is no coverage for claims for bodily injury or property damage that occurred before the Retroactive Date.

The initial Retroactive Date will generally apply to renewals we issue. But the Retroactive Date may be advanced with your written consent only, if:

- you change insurers;

- a substantial change in your operations increases your exposure to loss;

- you fail to provide us with information you knew or should have known about the nature of your business or premises; or

- other underwriting considerations.

In any of these cases and in some others the Extended Reporting Periods may be important to you.

**Extended Reporting Periods or "Tails"**

When applicable, the Extended Reporting Periods provided in the "claims-made" policy will increase the time within a claim, will be eligible for the policy's coverage. Some people call these Extended Reporting Periods "tails". They ensure that no injury or damage need go uncovered because of a) cancellation or non-renewal, b) an advanced Retroactive Date, or c) replacement with insurance that is not on a "claims-made" basis for bodily injury or property damage.

In any of these circumstances our policy provides you with a Basic Extended Reporting Period that has two provisions. The first provides a 60 day period beyond policy termination to report claims for bodily injury or property damage occurring during the policy period. The second provides an unlimited period commencing 60 days after policy termination but only for claims that result from bodily injury or property damage that was reported to us no later than 60 days after the end of the policy period.

In either case, the bodily injury or property damage must have occurred before the end of the policy period, but not before the Retroactive Date. Claims first made during this Basic Extended Reporting Period will be considered to have been made during the policy period and will be subject to the policy's Limits of Liability. There is no additional charge for this "tail", but it applies only if you have no other insurance for the claim.

**The Supplemental Extended Reporting Period Endorsement**

The policy also guarantees under certain circumstances that you may purchase an endorsement providing a Supplemental Extended Reporting Period. With this amendment, claims first made at any time after the expiration of the Basic Extended Reporting Period will be considered first made during the policy period, again provided that the injury or damage occurred before the end of the policy period, but not before the policy's retroactive date. We will advise you of the Basic Extended Reporting Period and the availability of the Supplemental Extended Reporting Period. The additional premium for the Supplemental Extended Reporting Period will be determined by our rates in effect at the time of termination of the policy or the renewal or replacement of this policy with coverage less favorable to you than that of your preceding policy. Such rates may be subject to a substantial increase over the rates currently in effect. Upon your written request, we will provide the average statewide percentage changes and effective dates of each rate revision for this type of insurance which we have implemented during the five (5) year period immediately preceding the effective date of the policy. Such rate changes may or may not be indicative of future rate changes. Should you wish to purchase the Supplemental Extended Reporting Period, you must advise in writing and pay us the additional premium.

**"Claims-Made" Rating**

Our rates for coverage on a "claims-made" basis may be lower than our rates for the same scope of coverage on an "occurrence" basis. Over time, as you renew your "claims-made" policy, this rate difference or discount for "claims-made" will narrow. The reason for this difference is that the "occurrence" form has an unlimited "tail" built into every policy. Whereas, the "claims-made" form provided only the tails discussed above.

**Special "Claims-Made" Endorsement**

Your "claims-made" form, when issued, may have an amendment, excluding coverage for injury arising out of specific accident(s), product(s), work or location(s). We may not, however, attach this endorsement to a renewal of "claims-made" policy unless we amend our expiring policy to provide Extended Reporting Periods for any of the injury and damage that may arise from the excluded accident, product, work or location. Such events will automatically receive the Basic Extended Reporting Period and you will be entitled to purchase the Supplemental Extended Reporting Period for such excluded events.

Your signature on this document is necessary to comply with your state's insurance regulations.

Signature _____

Name _____

Title _____



**CHUBB**

## IMPORTANT NOTICE TO POLICYHOLDERS

## TERRORISM RISK INSURANCE ACT OF 2002

This Important Notice is being provided with your policy to further satisfy the disclosure requirements of the Terrorism Risk Insurance Act of 2002 ("TRIA").

At the time you received the written offer for this policy, we provided you with an Important Notice to Policyholders indicating that the insurance provided in your policy for losses caused by certain acts of terrorism (as defined in TRIA) would be partially reimbursed by the United States of America, pursuant to the formula set forth in TRIA. In addition, as required by TRIA, we:

- indicated that we would make available insurance for such losses in the same manner as we provide insurance for other types of losses;

- specified the premium we would charge, if any, for providing such insurance; and

- except to the extent prohibited by law, gave you the opportunity to reject such insurance and have a terrorism exclusion, sublimit or other limitation included in your policy.

This Important Notice refers back to that Important Notice and provides information about your decision and the manner in which your policy has been subsequently modified.

If:

- You rejected terrorism insurance under TRIA, your policy includes the appropriate amendatory endorsement(s).

- You did not reject terrorism insurance under TRIA, the premium charged for your policy, including that portion applicable to terrorism insurance under TRIA, is shown in your policy. To the extent your policy includes a limitation on terrorism insurance, it has been modified so that such limitation does not apply to terrorism insurance under TRIA.

Please carefully review your policy and the Important Notice previously provided to you for further details. Please remember that only the terms of your policy establish the scope of your insurance protection.

**Please note that if your policy:**

- *provides commercial property insurance in a jurisdiction that has a statutory standard fire policy, the premium we charge for terrorism insurance under TRIA, includes an amount attributable to the insurance provided pursuant to that standard fire policy. Rejection of such statutory insurance is legally prohibited.*

- *is a workers compensation policy, rejection of insurance for terrorism is legally prohibited.*



# IMPORTANT NOTICE TO POLICYHOLDERS

**This Important Notice is not your policy. Please read your policy carefully to determine your rights, duties, and what is and what is not covered. Only the provisions of your policy determine the scope of your insurance protection.**

**THIS IMPORTANT NOTICE PROVIDES INFORMATION CONCERNING POSSIBLE IMPACT ON YOUR INSURANCE COVERAGE DUE TO COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS.**

**PLEASE READ THIS NOTICE CAREFULLY.**

Various trade or economic sanctions and other laws or regulations prohibit us from providing insurance in certain circumstances. For example, the United States Treasury Department's Office of Foreign Asset Control (OFAC) administers and enforces economic and trade sanctions and places restrictions on transactions with foreign agents, front organizations, terrorists, terrorists organizations, and narcotic traffickers. OFAC acts pursuant to Executive Orders of the President of the United States and specific legislation, to impose controls on transactions and freeze foreign assets under United States jurisdiction. (To learn more about OFAC, please refer to the United States Treasury's web site at http://www.treas.gov/ofac.)

To the extent that you or any other insured, or any person or entity claiming the benefits of this insurance has violated any applicable sanction laws, this insurance will not apply.

We have added a condition or section that applies to the entire policy called Compliance With Applicable Trade Sanctions, which stipulates that your insurance policy does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.



Form 99-10-0792 (Ed. 9-04)          *Important Notice*

UMBREL0010



## Chubb Commercial Excess And Umbrella Insurance

*Premium Bill*

| | |
|---|---|
| *Policy Period* | JANUARY 17, 2005    to JANUARY 17, 2006 |
| *Effective Date* | January 17, 2005 |
| *Policy Number* | 7982-16-59  DEN |
| *Insured* | HEALTH INVENTURES, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | February 25, 2005 |
| *Producer* | LOCKTON COMPANIES OF COLORADO, INC. |

**THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY**

Please Send Payment To Agent Or Broker

| Coverage | Premium |
|---|---|
| | $ |
| | |
| Total | $ |

**Portion of total premium attributable for Terrorism and statutory standard fire where applicable is $**        **0.00**

When sending payment please indicate policy or certificate number.

Note: Please return this bill with payment and include any additional changes.





**CHUBB**

## Chubb Commercial Excess And Umbrella Insurance

### Declarations

**Chubb Group of Insurance Companies**
**15 Mountain View Road**
**Warren, NJ 07059**

*Named Insured and Mailing Address*

HEALTH INVENTURES, LLC
10901 W 120TH AVE, # 400
BROOMFIELD, CO 80021

*Policy Number*      7982-16-59  DEN

*Issued by the stock insurance company*
*indicated below, herein called the company.*

**FEDERAL INSURANCE COMPANY**

*Producer No.* 0015192-99999

*Producer*     LOCKTON COMPANIES OF COLORADO, INC.
8110 E UNION AVE STE 700
DENVER, CO 80237-2984

*Incorporated under the laws of Indiana*

## Policy Period

From:   JANUARY 17, 2005     To:    JANUARY 17, 2006
12:01 A.M. standard time at the Named Insured's mailing address shown above.

## Premium

$

## Limits Of Insurance

| | | |
|---|---|---|
| Excess Coverage Other Aggregate Limit (as applicable) | $ | 5,000,000. |
| Umbrella Coverages Aggregate Limit | $ | 5,000,000. |
| Products Completed Operations Aggregate Limit | $ | 5,000,000. |
| Advertising Injury and Personal Injury Aggregate Limit | $ | 5,000,000. |
| Each Occurrence Limit | $ | 5,000,000. |

## Authorization

In Witness Whereof, the company issuing this policy has caused this policy to be signed by its authorized officers, but this policy shall not be valid unless also signed by a duly authorized representative of the company.

**FEDERAL INSURANCE COMPANY**

*Henry A Aubil*
Secretary

*Thomas F. Motamed*
President

*Authorized Representative*      *Robert Hamburger*

February 25, 2005





**CHUBB**

## Chubb Commercial Excess And Umbrella Insurance

### Schedule Of Forms

| | |
|---|---|
| Policy Period | JANUARY 17, 2005   to JANUARY 17, 2006 |
| Effective Date | January 17, 2005 |
| Policy Number | 7982-16-59 DEN |
| Insured | HEALTH INVENTURES, LLC |
| Name of Company | FEDERAL INSURANCE COMPANY |
| Date Issued | February 25, 2005 |

*As of the effective date printed above, this is the Schedule Of Forms applicable to this policy:*

| | Form Number | |
|---|---|---|
| IMPORTANT NOTICE - OFAC | 99-10-0792 | (09/04) |
| FEDERAL INS. CO. - UMBRELLA DECLARATION | 07-02-0817 | (07/01) |
| CHUBB COMMERCIAL EXCESS & UMBRELLA INSURANCE | 07-02-0815 | (07/01) |
| COMPLIANCE WITH APPLICABLE TRADE SANCTIONS | 07-02-1988 | (02/04) |
| EXCLUSION OF CERTIFIED ACTS OF TERRORISM | 07-02-1958 | (01/03) |
| MANUSCRIPT ENDORSEMENT | 99-02-02 | (07/01) |
| BIOLOGICAL AGENTS EXCL. | 07-02-1692 | (07/01) |
| CARE, CONTROL OR CUSTODY - POLICY EXCLUSION | 07-02-0837 | (07/01) |
| FOREIGN LIABILITY EXCL. BI/PD/AI/PI COV. B | 07-02-0861 | (07/01) |
| INTELLECTUAL PROPERTY LAWS OR RIGHTS | 07-02-1146 | (07/01) |
| PROFESSIONAL SERVICE EXCL. COV. B | 07-02-0863 | (07/01) |
| POLLUTION - HOSTILE FIRE EXCL. COV. A | 07-02-0887 | (07/01) |
| PREMIUM INSTALLMENTS - CONDITION | 07-02-0950 | (07/01) |
| SUPPLEMENTAL PAYMENTS | 07-02-0845 | (07/01) |
| SPECIFIC ENTITIES EXCLUSION | 07-02-0857 | (07/01) |
| SCHEDULE OF UNDERLYING INSURANCE | 07-02-0922 | (07/01) |



**UMBREL0013**



## Chubb Commercial Excess And Umbrella Insurance

### Schedule Of Underlying Insurance

Effective date: JANUARY 17, 2005

Policy Number: 7982-16-59 DEN

Insured: HEALTH INVENTURES, LLC

| Description | Limits | |
|---|---|---|
| **Commercial General Liability** | | |
| Insurer: LEXINGTON INSURANCE COMPANY | $ 1,000,000. | Each Occurrence |
| | $ 3,000,000. | General Aggregate |
| Policy No.: 4768718(06) | $ 1,000,000. | Products/Completed Operations Aggregate |
| Policy Period: 01/17/2005 | | |
| to: 01/17/2006 | $ 1,000,000. | Personal and Advertising Injury |

Occurrence

| **Automobile Liability** | | |
|---|---|---|
| Insurer: FEDERAL INSURANCE CO | $ 1,000,000. or | Each Accident |
| Policy No.: 73520081 | Bodily Injury Liability | |
| Policy Period: 01/17/2005 | | Each Person |
| to: 01/17/2006 | | Each Accident |
| | Property Damage Liability | |
| | | Each Accident |

Includes all owned, non-owned and hired cars

**Authorization**    All other terms and conditions remain unchanged.

*Robert Hamburger*

Authorized Representative
February 25, 2005

Chubb Commercial Excess And Umbrella insurance
Form 07-02-0922 (Rev. 7-01)    Schedule Of Underlying Insurance    last page   Page 1

UMBREL0014





## Chubb Commercial Excess And Umbrella Insurance

### Table Of Contents

| Section | Page No. |
|---|---|
| Coverage/Excess Follow-Form Coverage A | 3 |
| Coverages/Umbrella Coverage B | 3 |
| Investigation, Defense And Settlements | 5 |
| Supplementary Payments | 5 |
| Coverage Territory | 6 |
| Who Is An Insured/Excess Follow-Form Coverage A | 6 |
| Who Is An Insured/Umbrella Coverage B | 6 |
| Limits Of Insurance | 8 |
| When Excess Follow-Form Coverage A Applies (Drop Down) | 10 |
| Exclusions/Excess Follow-Form Coverage A | 10 |
| Exclusions/Umbrella Coverage B | 11 |
| Policy Exclusions | 17 |
| Conditions | 19 |
| Definitions/Umbrella Coverage B | 25 |
| Policy Definitions | 29 |



*THIS PAGE INTENTIONALLY LEFT BLANK*



## Chubb Commercial Excess And Umbrella Insurance

### Contract

Please read the entire policy carefully. The terms and conditions of this insurance include the various sections of this contract: Coverages; Investigation, Defense And Settlements; Supplementary Payments; Coverage Territory; Who Is An Insured; Limits Of Insurance; When Excess Follow-Form Coverage A Applies (Drop Down); Exclusions; Conditions and Definitions, as well as the Declarations and any Endorsements and Schedules made a part of this insurance.

Throughout this contract the words "you" and "your" refer to the Named Insured shown in the Declarations and other persons or organizations qualifying as a Named Insured under this contract. The words "we," "us" and "our" refer to the Company providing this insurance.

In addition to the Named Insured, other persons or organizations may qualify as insureds. Those persons or organizations and the conditions under which they qualify are identified in the Who Is An Insured section of this contract.

Words and phrases that appear in bold print have special meanings and are defined in the Definitions section of this contract.

---

**Coverage/
Excess Follow–Form
Coverage A**

Subject to all of the terms and conditions applicable to Excess Follow-Form Coverage A, we will pay, on behalf of the insured, that part of loss to which this coverage applies, which exceeds the applicable underlying limits.

This coverage applies only if the triggering event that must happen during the policy period of the applicable underlying insurance happens during the policy period of this insurance.

This coverage will follow the terms and conditions of underlying insurance described in the Schedule Of Underlying Insurance, unless a term or condition contained in this coverage:

- differs from any term or condition contained in the applicable underlying insurance; or
- is not contained in the applicable underlying insurance.

With respect to such exceptions described above, the terms and conditions contained in this coverage will apply, to the extent that such terms and conditions provide less coverage than the terms and conditions of the applicable underlying insurance.

This coverage does not apply to any part of loss within underlying limits, or any related costs or expenses.

We have no obligation under this insurance with respect to any claim or suit settled without our consent.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

---

**Coverages/
Umbrella Coverage B**

**Bodily Injury And
Property Damage
Liability Coverage**

Subject to all of the terms and conditions applicable to Umbrella Coverage B, we will pay, on behalf of the insured, loss by reason of liability:

- imposed by law; or
- assumed in an insured contract;

---

